IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRUCE BAINBRIDGE,<br>    Plaintiff, | :<br>:<br>: |
| v. | :     CIVIL ACTION NO. 23-CV-4835 |
| | : |
| PENNSYLVANIA DEPARTMENT<br>OF CORRECTIONS, *et al.*,<br>    Defendants. | :<br>:<br>: |

## MEMORANDUM

SÁNCHEZ, C.J.                                                                               FEBRUARY 12, 2024

Bruce Bainbridge, a convicted prisoner housed at SCI Phoenix, filed a Complaint against the Pennsylvania Department of Corrections and thirteen of its employees seeking money damages for civil rights and state law violations.[1] Each Defendant is named in their individual and official capacities. Because Bainbridge has plausibly alleged facts supporting an Eighth Amendment failure to protect claim against three of the Defendants only, the request to proceed *in forma pauperis* will be granted and the Complaint will be dismissed in part pursuant to 28 U.S.C. § 1915A. Bainbridge will be granted the option of either proceeding only on the claim the Court determines to pass statutory screening, or filing an amended complaint.

---

[1] Bainbridge also seeks as relief a declaration that his rights have been violated. (Compl. at 8.) Declaratory relief is unavailable to adjudicate past conduct, so his request for declaratory relief is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm."). The request for declaratory relief will be dismissed.

I.      **FACTUAL ALLEGATIONS**[2]

Bainbridge makes allegations regarding several events at SCI Phoenix. Bainbridge first avers on December 7, 2021, he told Defendant Lina Knarr his housing unit, S block, was unsafe because slider doors to the unit are not normally closed. (Compl. at 3.) He also told Knarr on multiple occasions his unit was unsafe because intimidation and extortion were rampant but she did nothing about it. (*Id*. at 4.) Those doors allegedly prevent other inmates from walking onto S block from adjoining units. (*Id*. at 3.) He also told her there was gang activity and the unit was "out of control." (*Id*. at 3-4.) Defendant Deputy Terra complained about the slider doors being left open while touring the block, but did nothing to enforce security. (*Id*. at 4.) Bainbridge also mentioned the issue about the slider doors not being closed and about gang activity to Defendant Unit Manager Shoenburger. (*Id*.)

On December 13, 2021, an inmate named Kunkel came into Bainbridge's cell on S block with a lock attached on a string and a razor blade attached to a toothbrush and demanded Bainbridge give him commissary items. (*Id*. at 5) Kunkel stated "no one will care," implying that because of his own demeanor and Bainbridge's age, "the PADOC and the officers don't care about closing the doors or keeping slidder [sic] doors closed to [the unit, Kunkel] can just walk onto the unit at will." (*Id*.) As Bainbridge tried to get out of the cell, Kunkel repeatedly hit him in the head while trying to cut him with the razor blade. (*Id*.) Bainbridge managed to push Kunkel away, but fell. (*Id*.) Bainbridge was told by another inmate he was bleeding and Defendant "CO Styles was nowhere to be sighted." (*Id*.) Unit Manager Shoenburger and Sgt. Green entered the unit through the open slider door; Shoenburger attended to Bainbridge while Styles escorted Kunkel off the unit

---

[2] The factual allegations set forth in this Memorandum are taken from Bainbridge's Complaint (ECF No. 1). The Court adopts the sequential pagination assigned to the Complaint by the CM/ECF docketing system.

2

to his assigned cell on the adjoining unit.  (*Id*. at 4-5.)  Bainbridge also alleges Kunkel was able to pass between the units with the lock and razor blade and into his cell "well after mass movement was completed and 10 minutes from lock up."  (*Id*. at 5.)

Bainbridge was treated at medical triage after the incident for head injuries where he received stitches.  (*Id*.)  He suffered a concussion and bruises, and was held for observation.  (*Id*.)  He was taken the same day, December 13, 2021, to the RHU while still in concussion protocol and issued a misconduct for fighting.  (*Id*.)  He received a hearing on December 15, 2021, where the misconduct was allegedly dismissed.  (*Id*.)  He was released from the RHU on December 23 and placed on H block even though he requested to be returned to S block, which Bainbridge asserts caused him separation anxiety since the misconduct was false.  (*Id*.)  Thereafter, Bainbridge was seen by medical for a range of symptoms from the attack including confusion, anxiety, head trauma, headaches, physical ailments, confusion, memory lapse, dizziness, ringing in the ear, blurry vision, and neck, shoulder, arm, back, and leg injuries from his fall.  (*Id*.)  He continues to have residual effects from the incident.  (*Id*. at 5-6.)

After he was placed on H block, Bainbridge tried to locate and get his property.  Initially, his property could not be located because it was not in the property rooms.  (*Id*. at 6.)  He claims his property was not inventoried and not secure for ten days after the attack.  (*Id*.)  Bainbridge alleges his due process rights were violated by being separated from his property and by "staff" not giving him an inventory sheet.  (*Id*.)  He asserts this constituted "retaliation creating a hostile environment and irreparable harm by denying [Bainbridge his] medical devices; dentures, bed wedge, medications, blanket, religious items, legal materials and clothing."  (*Id*.)  When his property was located, Bainbridge was allegedly told by a property officer he had too much property, that prison policy allows an inmate to have a footlocker and two file boxes, and he could

not have his property. (*Id*.)  Bainbridge refers to emails from Defendant John Terra and S. Bradley, a non-party, telling him he could not leave the property room with more than two boxes.  He was "given selected property items," totaling two boxes that contained ramen, electronic devices, his footlocker, bath robe, and magazines, but he was left confused as to the process. (*Id*.)  Bainbridge also complains that, after the incident with Kunkel, his change of housing and job reassignment led to the eventual loss of his prison job. (*Id*.)

Separately, Bainbridge alleges Defendants J. Luquis, Shoenberger, Knarr and other staff acted on rumor and retaliated against him for a false incident report involving an inmate named Rutherford. (*Id*.)  Luquis allegedly informed Bainbridge on September 19, 2023[3] a unit team review would take place involving an incident report that Rutherford had been in his cell. Bainbridge told the team he was helping Rutherford complete a Prison Rape Elimination Act ("PREA") form. (*Id*. at 7.)  He believes Rutherford provided a "pressured or consented false/distorted statement" that Bainbridge was never permitted to see, which resulted in the removal of Bainbridge's "CPS duties."[4] (*Id*.)  Bainbridge further alleges he was moved by Luquis, and Defendants A. Olivieri, Nurse Olevencia, and Captain Fitzgerald-Young from H block to R block, and lost his job based on a rumor about sexual harassment and abuse by another inmate, possibly Rutherford. (*Id*.)  Defendant Grievance Coordinator Owens then allegedly lied during the investigation of a grievance Bainbridge filed about the dates, times, and substance of the unit team review, "prompting [Bainbridge] to go outside parameters of criteria." (*Id*.)  Owens and Defendant Terra apparently found his grievance was frivolous and defective on its face and ignored

---

[3] In other parts of the same section, Bainbridge asserts the incident occurred in October 2022. (Compl. at 7.)

[4] This term is not explained but appears to refer to Bainbridge's prison job.

4

the seriousness of his claims because Bainbridge was "telling on other staff members for not making reports or referring [the sexual incident] to prea Lt." (*Id.*)

## II. STANDARD OF REVIEW

Although Bainbridge has paid the filing fee in full, the Court has the authority to screen his Complaint pursuant to 28 U.S.C. § 1915A. *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing district courts have authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*). Section 1915A requires the Court to "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Neal v. Pa. Bd. of Prob. & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12

F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As plaintiff is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

Federal constitutional claims may be brought in federal court pursuant to 42 U.S.C. § 1983. "Section 1983 does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996); *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) ("Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors.") (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law.").

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'"

6

(quoting *Rode*, 845 F.2d at 1207)). *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. New Jersey Dept. of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

      A.      **Claims Against the PADOC and Official Capacity Claims**

Bainbridge seeks money damages, naming the PADOC and each individual Defendant – all alleged to be employees of the Commonwealth of Pennsylvania – in his or her official and individual capacities. The Eleventh Amendment bars suits against the Commonwealth and its agencies in federal court seeking monetary damages. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against Commonwealth officials, like all the Defendants in this case, acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Additionally, where a claim is filed against state officials who were not directly involved in the activities that caused the alleged constitutional violation, but are instead named as defendants because of their positions in state government, are deemed to be sued in their official capacities and thus entitled to Eleventh Amendment immunity. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020). As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as its officials sued in their

official capacities, are immune from suits filed in federal court. Accordingly, Bainbridge's official capacity claims and claim against the PADOC are dismissed with prejudice.

      **B.**      **Individual Capacity Claims**

            **1.**      **Failure to Protect Claim**

The Court understands Bainbridge to be asserting Eighth Amendment "failure to protect" claims based on the incident involving his attack by inmate Kunkel. Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee inmates' safety. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation and citation omitted). This includes a duty "to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal quotations omitted). "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

*Farmer* creates a "deliberate indifference" standard that Courts apply to such Eighth Amendment claims. For a failure to protect claim against a prison official to be plausible, a plaintiff must allege: (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) the prison official acted with deliberate indifference to the substantial risk; and (3) the official's deliberate indifference caused harm. *See Farmer*, 511 U.S. at 834; *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997); *see also Travillion v. Wetzel*, 765 F. App'x 785, 790 (3d Cir. 2019) (*per curiam*). Deliberate indifference in the context of a failure to protect claim requires the plaintiff to plausibly allege the defendant prison officials "must actually [have been] aware of the existence of the excessive risk; it is not sufficient that [prison officials] should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001). "However, subjective

8

knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk." *Id.* (citing *Farmer*, 511 U.S. at 844).

Bainbridge alleges that, shortly before he was attacked, he told Defendant Knarr S block was unsafe because the slider doors to the unit which are supposed to prevent other inmates from walking onto S block from adjoining units, are not normally closed, allowing inmates like Kunkel to come onto S block. (Compl. at 3.) He also told Knarr on multiple occasions his unit was unsafe because of gang activity, and intimidation and extortion were rampant, but she did nothing about it. (*Id*. at 4.) Deputy Terra allegedly complained about the doors being left open when he toured the block, but did nothing to enforce security. (*Id*. at 4.) Bainbridge also mentioned the issue to Defendant Unit Manager Shoenburger. (*Id*.) This claim will be served on Knarr, Terra, and Shoenburger for a responsive pleading because these allegations plausibly assert that these Defendants were aware of the existence of an excessive risk.

Bainbridge also makes failure to protect allegations against Sgt. Green and CO Styles involving the Kunkel incident. After the attack, Green entered the unit with Shoenburger through the slider door and attended to Bainbridge while Styles escorted Kunkel away. (Compl. at 4-5.) These allegations fail to a state a plausible failure to protect claim since Bainbridge's mere assertion that they walked through the open door does not allege that Green and Styles acted with deliberate indifference to the substantial risk of serious harm from the open door or that their deliberate indifference caused the harm from the Kunkel attack. There is no allegation these

9

Defendants were in a position to intervene or stop the attack or to have had specific knowledge of a risk to Bainbridge's safety.[5] Accordingly, the claim will be dismissed as to Green and Styles.

### 2. Property Loss Claim

Following the Kunkel incident and his release from the RHU, Bainbridge was housed on a different block and tried to locate and get his property. Bainbridge alleges his due process rights were violated by being separated from his property and by "staff" not giving him an inventory sheet. He asserts this constituted "retaliation creating a hostile environment and irreparable harm by denying [Bainbridge his] medical devices; dentures, bed wedge, medications, blanket, religious items, legal materials and clothing." (Compl. at 6.) When his property was located, a property officer allegedly told Bainbridge he had too much property, and because prison policy allows an inmate to have a footlocker and two file boxes, he could not have his property. (*Id.*) Bainbridge refers to emails from Defendant John Terra and a non-defendant named S. Bradley telling him he could not leave the property room with more than two boxes. He was allowed to take two boxes containing ramen, electronic devices, his footlocker, bath robe, and magazines.

A prisoner in Pennsylvania custody cannot state a constitutional claim based on loss of property. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson*, 468 U.S. at 533)). Because the Pennsylvania Tort Claims Act, in addition to the prison grievance process, provides an

---

[5] The allegation that Styles was "nowhere to be sighted" during the incident is too undeveloped to meet the deliberate indifference standard since Bainbridge fails to explain why that fact is relevant.

adequate remedy for a willful deprivation of property, Bainbridge's due process claim is not plausible. *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (*per curiam*).

To the extent that the claim involves legal materials, it is properly construed as a First Amendment access-to-the-courts claim. "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In other words, a prisoner claiming he was denied access to the courts due to the loss of legal materials or otherwise, must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates a "nonfrivolous" and "arguable" claim was lost because he was denied access to the courts. *Christopher*, 536 U.S. at 415. "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id*. Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (*per curiam*). Because Bainbridge does not allege the loss of his legal materials caused him actual injury – a lost nonfrivolous and arguable legal claim – any property loss claim based on his legal materials is also not plausible.

To the extent the claim involves medical supplies like dentures, unspecified medications, a wedge pillow, and unspecified medical devices, the claim is not plausible because it is undeveloped. The deliberate indifference standard of *Farmer* applies in this context as well, meaning prison officials must know of and disregard an excessive risk to a serious medical need. *Id.*, 511 U.S. at 837. While Bainbridge discusses the injuries he received in the Kunkel incident, he does not allege he has a serious medical need related to these allegedly lost items. There is also no allegation that the only Defendant he mentions with regard to this claim, John Terra, was aware of and disregarded this need when he told Bainbridge he could only get back two boxes of property, or was aware these items were not returned. Thus, any medical deliberate indifference claim based on property loss is dismissed. Bainbridge's mere mention of religious items being lost is not sufficient to allege a First Amendment free exercise claim since he does not allege the loss placed a substantial burden on his ability to practice his faith. *See Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989) (stating the free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden). Accordingly, the property loss claims will be dismissed, but Bainbridge will be permitted to file an amended complaint to attempt to cure the specific defects the Court has identified with regard to his legal, medical, and religious property items.

### 3. Loss of Prison Job/Cell Reassignment Claim

Bainbridge also complains that, after the incident with Kunkel, his change of housing and job reassignment led to the eventual loss of his prison job. (*Id.*) Separately, he also alleges his cell was reassigned and he was removed from his prison job by Defendants Luquis, Olivieri, Olevencia, and Fitzgerald-Young following the incident involving inmate Rutherford. Neither aspect of this claim is plausible.

It is well-settled that prisoners have no inherent constitutional right to placement in any particular prison, to any particular security classification, or to any particular housing assignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (holding the Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement); *Lane v. Tavares*, No. 14-991, 2016 WL 7165750, at *16 (M.D. Pa. July 12, 2016) (same). It is also well settled that a prisoner cannot state a plausible constitutional claim based on the loss of a prison job. *See Watson v. Sec'y Pennsylvania Dep't of Corr.*, 567 F. App'x 75, 78 (3d Cir. 2014) ("Inmates do not have a liberty or property interest in their job assignments that would give rise to Due Process Clause protection.") (citing *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir.1989); *Paulson v. Burke*, No. 20-3678, 2020 WL 5407892, at *4 (E.D. Pa. Sept. 9, 2020) ("Paulson, however, cannot state a constitutional claim based on the loss of his work assignment because inmates do not have a constitutional right to employment during incarceration."). Accordingly, the cell reassignment and job loss claims are dismissed with prejudice.[6]

---

[6] As part of the job loss allegations involving the incident with Rutherford, Bainbridge similarly asserts Defendants Luquis, Shoenberger, Knarr and other staff acted on rumor and retaliated against him over a false incident report. Luquis allegedly informed Bainbridge on September 19, 2023 that a unit team review would take place involving an incident report reporting Rutherford had been in his cell. Bainbridge told the team he was helping Rutherford complete a Prison Rape Elimination Act ("PREA") form. (*Id.* at 7.) He believes Rutherford provided a "pressured or consented false/distorted statement" that Bainbridge was never permitted to see,

13

### 4. Claims Based on Grievances

Bainbridge further alleges the Defendant Grievance Coordinator Owens lied during the investigation of a grievance he filed, and Owens and Defendant Terra determined his grievance was frivolous and defective on its face, ignoring the seriousness of his claims, because Bainbridge was "telling on other staff members for not making reports or referring [the sexual incident] to prea Lt." To the extent Bainbridge seeks to assert a claim based on the grievance process itself, the claim is dismissed because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*).

However, when there is a process, a prisoner's filing of a grievance is constitutionally protected conduct. *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Davis v. Goord*, 320 F.3d 346, 35-53 (2d Cir. 2003)). In order to state a plausible First Amendment retaliation claim, a prisoner must allege: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit*

---

which resulted in the removal of Bainbridge's "CPS duties." These allegations fail to allege a plausible First Amendment retaliation claim or a due process claim.

A retaliation claim is not plausible because Bainbridge does not allege he engaged in constitutionally protected conduct with regard to the Rutherford incident. It was Rutherford whom Bainbridge alleges was attempting to use the PREA form to report improper conduct, not himself. A due process claim is not plausible because, for a convicted prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). Other than the loss of his prison job, a deprivation that itself does not involve a protected liberty interest, Bainbridge does not allege an atypical and significant hardship arising from the Rutherford incident.

14

*v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*). Bainbridge plausibly alleges he engaged in protected conduct when he filed his grievance. But he fails to allege he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and the constitutionally protected conduct was a substantial or motivating factor for the adverse action. *Rauser*, 241 F.3d at 333. Accordingly, any First Amendment retaliation claim based on the grievance is not plausible as alleged. Bainbridge will be given an opportunity to amend this claim if he can allege additional facts relevant to these two elements.

### 5. Claims Against Furguson, Sipple and Hopson

Bainbridge includes Tammie Furguson, Mandie Sipple, and Mr. Hopson in the list of Defendants but makes no allegations against these individuals in the Complaint. (Compl. at 2-3.) Because a "defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable, *Rode*, 845 F.2d at 1207, and personal involvement requires particular allegations of personal direction or of actual knowledge and acquiescence, *Dooley*, 957 F.3d at 374 (internal quotation omitted), the failure to allege any personal involvement by these Defendants renders any claim against them implausible. Bainbridge's claims against Furguson, Sipple and Hopson are therefore dismissed, but with leave to file an amended complaint curing this defect as well.

## IV.     CONCLUSION

For all the foregoing reasons, the Court directs service of the Complaint against Defendants Linda Knarr, John Terra, and Ms. Shoenburger for a responsive pleading on Bainbridge's Eighth Amendment failure to protect claim only.  Bainbridge will be provided the option of proceeding only on that claim or filing an amended complaint if he is able to plead the facts necessary to cure the defects in his other claims.  Specifically, the Court will dismiss without prejudice:  (1) the failure to protect claim against Ms. Green and Wayne Styles; (2) an access-to-the-courts claim based on loss of legal materials; (3) a deliberate indifference claim based on the loss of medical materials; (4) a First Amendment claim based on the loss of religious materials; (5) a First Amendment retaliation claim related to Bainbridge's grievances; and (6) a plausible claim against Defendants Tammi Furguson, Mandie Sipple and Mr. Hopson.

An appropriate Order follows with additional information on amendment.

                                                                                   BY THE COURT:


                                                                                   **/s/ Juan R. Sánchez**
                                                                                   **JUAN R. SÁNCHEZ, C.J.**

16